IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHER DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | § |
| | § |
| Plaintiff-Respondent, | § |
| V. | § CRIMINAL ACTION NO.  H- 10- 788- 1 |
| | § CIVIL ACTION NO. H- 13- 3127 |
| MICHAEL ANTHONY WILBOURN, | § |
| | § |
| Defendant-Petitioner | § |

## MEMORANDUM AND RECOMMENDATION

Before the Magistrate Judge in this federal habeas corpus proceeding pursuant to 28

U.S.C. § 2255 is Movant Michael Anthony Wilbourn's § 2255 Motion to Vacate, Set Aside or

Correct Sentence (Document No. 231),[1] and the United States' Response and Motion to Dismiss

Movant's § 2255 Motion (Document No. 249).  After reviewing Movant's § 2255 Motion, the

Government's Response and Motion to Dismiss, the record of the proceedings before the District

Court in underlying criminal case, and the applicable case law, the Magistrate Judge

RECOMMENDS, for the reasons set forth below, that the Government's Motion to Dismiss

(Document No. 249) be GRANTED, and that Movant Anthony Michael Wilbourn's § 2255

Motion (Document No. 231), be DENIED.

### I.      Procedural History

Movant Anthony Michael Wilbourn ("Wilbourn"), who is currently in the custody of the

United States Bureau of Prisons, is seeking federal habeus corpus relief under 28 U.S.C. § 2255.

This is Wilbourn's first attempt at § 2255 relief.

---

[1] Michael Anthony Wilbourn's Motion to Vacate, Set Aside or Correct Sentence can be found at Document No. 1 in Civil Action H- 13- 3127 and at Document No. 231 in Criminal Action No. H-10- 788-1.

On November 10, 2010, Wilbourn was charged by Indictment with aiding and abetting armed bank robbery in violation of 18 U.S.C. §§ 2, 2113(a) & (d) (Count 1), and with aiding and abetting the brandishing of a firearm during a crime of violence in violation 18 U.S.C. §§ 2, 924(c)(1)(A)(ii) (Count 2) (Document No. 27).   On April 1, 2011, Wilbourn pleaded guilty without a written plea agreement. (Document No. 70).  With respect to what the Government was prepared to prove against Wilbourn should the matter proceed to trial, the Government stated:

> Mr. Schultz: [T]he Government would be prepared to prove . . . that the young man to my left in the orange pants and white shirt, is the same Michael Wilbourn as is named in the Indictment. . . . that on Thursday, October 14, 2010, at about 9:45 a.m., the First National Bank . . . was robbed by four young black males. . . . Mr. Wilbourn . . . entered the bank. . . . Mr. Wilbourn . . . [was] armed with a pistol. . . . Mr. Wilbourn pointed a pistol at [an employee] and instructed her to get to the ground. . . . Mr. Wilbourn, Washington and Thomas ordered the employees to the vault room, where they demanded money. Each of the three [defendants] threatened to shoot the employees if they did not hurry up and show them where the money was. . . . Mr. Wilbourn assaulted Ms. Watkins by grabbing her hair and striking her face. . . . After obtaining the money prior to leaving the bank, Mr. Wilbourn and Mr. Thomas and Mr. Washington all threatened to shoot the bank employees if they moved.  They left the bank, got in an older Cadillac and drove away. . . . Mr. Wilbourn and Mr. Washington and Mr. Thomas were positively identified as being the three individuals who robbed the bank earlier that day. . . . Mr. Wilbourn confessed to physically assaulting one of the bank employees during the commission of the bank robbery.
>
> The Court: Mr. Wilbourn, would you tell me in your own words, what it is you did to commit the crime you're pleading guilty to?
>
> Mr. Wilbourn: Robbed a bank with a gun. (Document No. 177 at 25-33).

Prior to sentencing, a pre-sentence investigation report ("PSR") was prepared. (Document Nos. 94, 96, 101), to which Wilbourn filed written objections (Document Nos. 85, 86, 92).  Pursuant to the PSR, Wilbourn had a base offense level of 20 under U.S.S.G. § 2B3.1(a).  Wilbourn's base offense level was increased by two levels pursuant to U.S.S.G. § 2B3.1(b)(1) because the property of First National Bank, a financial institution was taken.  His

2

base offense level was increased by another two levels pursuant to U.S.S.G. § 2B3.1(b)(3)(A)

because a victim sustained bodily injury, and his base offense level was increased by an

additional four levels pursuant to U.S.S.G. § 2B3.1(b)(4)(B) because bank employees were

abducted, by being physically restrained and being forced, at gunpoint, to move from the lobby

area to the vault area of the bank.  Wilbourn's base offense level was increased by an additional

one level pursuant to U.S.S.G. § 2B3.1(b)(7)(B) because the intended loss amount totaled

$40,213.50.  Because Wilbourn accepted responsibility for his activities, and did so in a timely

manner, his offense level was reduced by three levels under U.S.S.G. § 3E1.1(a) and (b).  With

an adjusted offense level of 26, and a criminal history category of III,[2] Wilbourn had an advisory

guideline sentencing range of 78 to 97 months.

Wilbourn was sentenced on July 29, 2011.  (Document No. 115).  The Government

argued for a sentence at the upper end of the Guideline sentencing range, whereas Wilbourn's

counsel argued for a sentence at the low end of the advisory guideline sentencing range:

> Mr. Sanchez:  I would first say that I think a sentence within the Guidelines is appropriate in this case.  And the reason for that is the Court has ruled on just about every enhancement possible in a bank robbery case and has overruled our objections. . . . There is a four-level increase for holding people hostage or taking them, which obviously even under the Guidelines can account for a lot more actions than what was done here.  This was something, if you recall, from three weeks ago that was within the bank and went from one place to the other so they

---

[2] The PSR shows that Wilbourn had a criminal history score of 3, which included a 2006 conviction for prostitution in Harris County, Texas.  Wilbourn pleaded guilty and was sentenced to 180 days deferred adjudication probation on May 18, 2006.  On November 20, 2006 his probation was terminated as the term of community supervision expired.  *See* PSR ¶ 36.  In addition, Wilbourn was assigned three criminal history points for a theft in Fort Bend County, Texas.  Wilbourn pleaded guilty and was sentenced to four years imprisonment on August 11, 2009.  On December 23, 2009 he was paroled until September 8, 2011.  *See* PSR ¶ 37.  Additionally, Wilbourn was convicted of engaging in organized criminal activity in Fort Bend County, Texas.  Wilbourn was sentenced to four years imprisonment on August 11, 2009.  On December 23, 2009 he was paroled until September 8, 2011.  *See* PSR ¶ 38.  The PSR shows that Wilbourn was represented by counsel with respect to each offense.

could get to the teller room to take the money. But even in the Guidelines, they give examples of people going into get-away cars and using persons from inside the bank to help facilitate an escape. So that's not what we had in this situation yet.

So the point that I'm trying to make is that I think they are on the lower level of that culpability for the plus 4. And so there is not any need to go above and beyond the Guidelines to account for some of the other actions that were taking place in this case. I'm including the gun, the gun being pointed in the face of the tellers, they are getting a seven-year sentence stacked on top of what they are getting for the bank robbery already. I don't think going above that would be necessary.

Another point that I want to make, which I thought was an important point, was to try to show the Court what Mr. Wilbourn did while inside the bank compared to some of the others. And I think that the Court was able to hear from witnesses today and somewhat distinguish Mr. Wilbourn from some of the other defendants. . . . [I]f you stick within the Guideline calculation, I think that would give Mr. Wilbourn an opportunity to get towards the bottom of that Guideline calculation, and we would ask for the sentence at the bottom of that Guideline, which would be 78 months. When you add the 84 months that he's getting for the gun, I think that's more than enough, and a sentence above that would be higher than necessary.

Mr. Wilbourn's mother is very, very supportive. We've had now three attempts at having a sentencing hearing here. She's been to every sentencing hearing. She was at the initial arrest. She calls me very frequently. I know that once Mr. Wilbourn spends a lengthy amount of time in custody, which the bottom of the Sentencing Guidelines is a lengthy amount of time in custody, he will have people to come home to and be there to support him and to reintegrate him into society.

So I think the amount of time that we're asking for is more than enough to show Mr. Wilbourn, to punish Mr. Wilbourn, and also to let him rehabilitate while he's in custody. He's a 24-year-old man. What we're asking for is more than half of his life now. And him getting out of custody when he's in his late thirties, he will be much different individual than he is today.

[W]e would ask for a 78-month sentence stacked on top of the 87-month sentence.

(Document No. 171, Transcript of Sentencing Hearing at 77-79).

On July 29, 2011, Wilbourn was sentenced to a term of imprisonment of 97 months as to

Count One, followed by a consecutive term of 84 months as to Count Two, for a total term of

imprisonment of 181 months to be followed by a four-year term of supervised release. In

addition, he was ordered to pay a special assessment of $ 200, and restitution in the amount of

$4,735 as a jointly and severally liable co-defendant.  (Document No. 171, Transcript of

Sentencing Hearing at 103, 105).  Judgment was entered on August 5, 2011.  (Document No.

131).  With respect to Wilbourn's sentence, the Court stated:

> Mr. Wilbourn has pled guilty to aiding and abetting armed bank robbery, and
> aiding and abetting the brandishing of a firearm during this crime of violence.  He
> planned with co-defendants to execute the robbery of the First National Bank, a
> financial institution in Houston, Texas.  The defendant and two co-defendants
> were armed with firearms during the commission of the robbery in which they
> stole approximately $40, 213.50 from the bank.  This is Mr. Wilbourn's fourth
> criminal conviction.  He was under parole supervision at the time of the instant
> offense.
>
> There have been—in the Presentence Report there were factors identified
> suggesting a sentence outside the advisory Guideline range, but I do not believe
> that this is necessary in Mr. Wilbourn's case.  But that a sentence at the high end
> of the applicable Guideline range would be sufficient, but not greater than
> necessary to serve as a deterrent, provide punishment, and promote respect for the
> law, as outlined in 18 United States Code Section 3553(a).
>
> Pursuant to the Sentencing Reform Act of 1984, it's the judgment of the Court
> that the defendant, Michael A. Wilbourn, is hereby committed to the custody of
> the Bureau of Prisons to be imprisoned for a term of 97 months as to Count One,
> followed by a consecutive term of 84 months as to Count Two, for a total term of
> 181 months.  (Document No. 171, Transcript of Sentencing Hearing at 102- 03).
>
> Wilbourn appealed his sentence to the Fifth Circuit Court of Appeals.  (Document No.

120).  The Fifth Circuit affirmed the Court's application of the bodily-injury and abduction

enhancements.  (Document 217-1).  The Fifth Circuit wrote:

> This appeal arises from a bank robbery in which three co-defendants pleaded
> guilty and received two sentencing enhancements, which they challenge.  The
> first is a two-level enhancement for bodily injury pursuant to § 2B3.1(b)(3)(A)
> and the second is a four-level enhancement for abduction pursuant to
> § 2B3.1(b)(4)(A).
>
> Because there is sufficient evidence in the record of a bodily injury and because
> the injury is of a kind for which most victims would typically seek medical
> attention, we conclude that the application of the bodily-injury enhancement was
> appropriate. Furthermore, because the defendants forced the victims to move, at

gunpoint, form the customer-service area of the bank to the vault, we conclude that the application of the abduction enhancement was also appropriate. Therefore, we AFFIRM the judgment of the district court. . . .

In the presentence report (PSR), the probation officer recommended imposing a two-level enhancement pursuant to § 2B3.1(b)(3)(A) because a victim sustained a bodily injury. This enhancement was based on the probation officer's finding that, during the robbery, Wilbourn struck one of the bank employees in the face with his fist, causing pain.

The probation officer also recommended imposing a four-level enhancement pursuant to § 2B3.1(b)(4)(A) because bank employees were abducted during the offense. This enhancement was based on the probation officer's finding that, during the robbery, Washington, Wilbourn, and Thomas ordered the bank employees to move, at gun point, from the lobby of the bank to the vault area so that the robbers could obtain money.

Washington, Wilbourn, and Thomas objected to the PSR. Wilbourn and Thomas agreed that the application of the enhancement for bodily injury was inappropriate because the injury suffered was insufficient to support the enhancement. All three objected to the application of the abduction enhancement, arguing that they did not abduct anyone during the offense because ordering bank employees to the vault area was insufficient to support the enhancement.

At sentencing, one of the bank employees, Ms. Dorsey, testified that, during the robbery, she was punched in the face by Washington, not Wilbourn. She did not aver that the punch caused her to be injured, that she suffered pain, or that she sought medical attention.

The district court conducted a joint sentencing hearing for the four defendants. The district court determined that a punch to the face was a bodily injury under § 2B3.1(b)(3)(A) and overruled the defendants' objections to the application of the bodily-injury enhancement. The court also ruled that ordering the bank employees to move to the vault constituted abduction under § 2B3.1(b)(4)(A) and denied the defendants' objections to the application of the abduction enhancement. . . .

By objecting to the enhancements, Washington, Wilbourn, and Thomas have preserved these issues for appellate review. *See United States v. Neal*, 578 F.3d 270, 272 (5th Cir. 2009). This court reviews the district court's application or interpretation of the Guidelines *de novo* and its factual findings for clear error. *United States v. Cisneros-Gutierrez*, 517 F.3d 751, 764 (5th Cir. 2008). "Unless the factual finding is implausible in light of the record as a whole, it is not clearly erroneous." *United States v. Griffith*, 522 F.3d 607, 611-12 (5th Cir. 2008). (Document No. 217-1 at 2, 4-6).

## II. Discussion

Within one year of his conviction being final, Wilbourn timely filed a § 2255 Motion to Vacate, Set Aside, or Correct Sentence (Document No. 231), and a Memorandum of Law in Support (Document No. 232). Wilbourn asserts two grounds for relief: (1) that the court erred by applying a 2-level bodily injury enhancement because the evidence was insufficient, based on the decision in *Zuniga*[3] (Document No. 231 at 4; Document No. 232 at 5-1); and (2) that he was denied due process because of court-found facts supporting the bodily injury and abduction enhancements, based on the decision in *Alleyne*[4] (Document 231 at 5-6 and 11; Document 232 at 17-19).

With regard to the first issue, Wilbourn argues that the district court and the appellate court made the same mistake in that they both evaluated and focused on the particular actions of the "victim being punched in the face with a closed fist causing a sore nose," rather than the inquiry being on the injury sustained (if any). Section 1B1.1 defines "bodily injury" as "any significant injury, *e.g.*, an injury that is painful and obvious, or is of a type for which medical attention ordinarily would be sought." U.S.S.G. § 1B1.1, cmt. n.1(B). In evaluating the district court's application of the bodily-injury enhancement, Wilbourn argues "the focus of the inquiry is not on the actions of the defendant, but rather on the injury sustained" by the victim. *United States v. Guerrero*, 169 F.3d 933, 946 (5th Cir. 1999) (citation omitted).

Wilbourn contends that the victim's own words demonstrate that the sore nose was not the type of injury "for which medical attention would ordinarily be sought," making the central question whether the evidence demonstrates that the injury (sore nose) was both "painful *and*

---

[3] *United States v. Zuniga*, 720 F.3d 587 (5th Cir. 2013).
[4] *Alleyne v. United States*, 133 S. Ct 2151 (2013).

obvious" (emphasis added).  Wilbourn argues that the fact that the victim's nose was sore

("painful") does not demonstrate that the sore nose was also "obvious."  For an injury to be

"obvious," it must at least be noticeable to an observer.  *See United States v. Lancaster*, 6 F.3d

208, 210 n.2 (4th Cir. 1993).  According to Wilbourn, there is no evidence of an injury that is

"obvious," as required under the "bodily injury" definition.  Furthermore, in the instant case, as

well as in *Zuniga* the only evidence supporting the bodily-injury enhancement is a bare,

conclusionary statement from the victim stating that her nose was sore; "[b]ald, conclusionary

statements" in a PSR are not sufficiently reliable for sentencing purposes.  *See Harris*, 702 F.3d

at 230 n.2 (quoting *Elwood*, 999 F.2d at 817-18).

    With regard to the second issue, Wilbourn relies on *Alleyne*, which holds that "any fact

that, by law, increases the penalty for a crime is an element that must be submitted to the jury

and found beyond a reasonable doubt . . ." 133 S. Ct at 2155 (citation omitted).  Wilbourn argues

that the "bodily injury" enhancement and the "abduction" enhancement were not submitted to a

jury; therefore he was sentenced by a "preponderance of evidence" standard of proof in violation

of *Alleyne*.

    The Government argues that Wilbourn's challenge to the calculation of his guideline

sentence is an attempt to raise, once again, a substantive challenge to his sentence and in any

event, is not a ground for relief in a § 2255 proceeding.

    The law is clear: a claim that the district court erred in its application of the Sentencing

Guidelines is not grounds for § 2255 relief, because "technical application of the Sentencing

Guidelines does not give rise to constitutional issues." *United States v. Cervantes*, 132 F.3d

1106, 1109 (5th Cir. 1998) (citing *United States v. Vaughn*, 955 5.2d 367, 368 (5th Cir. 1992)).

Additionally, Wilbourn previously presented the issue to the Fifth Circuit Court of Appeals,

which denied it.  Claims raised and rejected on direct appeal are not grounds for § 2255 relief.

*United States v. Webster*, 392 F.3d 787, 791 (5th Cir. 2004); *see also, United States v. Rocha*,

109 F.3d 225, 229 (5th Cir. 1997) (issues raised and rejected on direct appeal cannot be raised in

a § 2255 motion).   Given the Fifth Circuit's determination, that the Court had not erred in

applying the bodily-injury and abduction enhancements, Wilbourn cannot re-litigate this claim

through his § 2255 motion.

With respect to the second issue, Wilbourn's argument that he was denied his "Due

Process" Sixth Amendment right to a trial "by an impartial jury" when the district court

enhanced and sentenced him to a two-level "bodily injury" enhancement, pursuant to

§ 2B3.1(b)(3)(A), and a four-level "abduction" enhancement, pursuant to § 2B3.1(b)(4)(A) under

the preponderance of evidence standard lacks merit.

Wilbourn's reliance on *Alleyne* is misplaced.  In *Alleyne*, the Supreme Court held that any

fact that increases the mandatory minimum punishment for a crime (other than the fact of a prior

conviction) "is an 'element' that must be submitted to the jury" and found beyond a reasonable

doubt. *Alleyne*, 133 S. Ct. 2151, 2155 (2013).  The Fifth Circuit has held that *Alleyne* does not

apply retroactively on collateral review.  *See In re Kemper*, 735 F.3d 211, 212 (5th Cir. 2013).

Furthermore, Wilbourn was not aggrieved under the *Alleyne* doctrine.  Wilbourn's convictions

were not subject to statutory minimum punishments.  Rather, the so-called "elements" of which

Wilbourn complains are in fact United States Sentencing Guidelines enhancements, which are

not required to be proved beyond a reasonable doubt and not subject to the holding in *Alleyne*.

The *Alleyne* decision did not affect the holding in *United States v. Booker*, 543 U.S. 220 (2005),

that sentencing courts may make factual findings that increase a defendant's sentencing guideline

range, so long as the guidelines are treated as advisory.  Because Wilbourn's sentence was increased because of the application of guidelines provisions, *Alleyne* does not apply in this case.

## III. Conclusion and Recommendation

Based on the foregoing, it is

RECOMMENDED that the Government's Motion to Dismiss Movant's § 2255 Motion (Document No. 249) be GRANTED, and that Movant Michael Anthony Wilbourn's § 2255 Motion to Vacate, Set Aside or Correct Sentence (Document No. 231) be DENIED.

The Clerk shall file this instrument and provide a copy to all counsel and unrepresented parties of record.  Within 14 days after being served with a copy, any party may file written objection pursuant to 28 U.S.C. § 636(b)(1)(C), Fed.R.Civ.P. 72(b), and General Order 80-5, S.D. Texas.  Failure to file objections within such period shall bar an aggrieved party from attacking factual findings on appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Ware v. King*, 694 F.2d 89 (5th Cir. 1982), *cert. denied*, 461 U.S. 930 (1983); *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982) (en banc).  Moreover, absent plain error, failure to file objections within the fourteen day period bars an aggrieved party from attacking conclusions of law on appeal. *Douglass v. United Services Automobile Association*, 79 F.3d 1415, 1429 (5th Cir. 1996).  The original of any written objections shall be filed with the United States District Clerk, P.O. Box 61010, Houston, Texas 77208.

Signed at Houston, Texas, this _25th_ day of _June_ ,

2014.

FRANCES H. STACY
UNITED STATES MAGISTRATE JUDGE